Matter of Cartwright v Kennedy (2024 NY Slip Op 04354)

Matter of Cartwright v Kennedy

2024 NY Slip Op 04354

Decided on August 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 29, 2024

CV-24-1294
[*1]In the Matter of Caroline Cartwright et al., Respondents,
v
Robert F. Kennedy Jr. et al., Appellants, et al., Respondents.

Calendar Date:August 28, 2024

Before:Garry, P.J., Clark, Pritzker, Ceresia and Mackey, JJ.

Law Office of Gary L. Donoyan, Manhasset (Jim Walden of Walden Macht Haran & Williams LLP, New York City, of counsel), for appellants.
Hecker Fink LLP, New York City (John C. Quinn of counsel) and Howard E. Colton, Freeport and Harris Beach PLLC, Uniondale (Keith M. Corbett of counsel), for Caroline Cartwright and others, respondents.

Per Curiam.
Appeals (1) from an order of the Supreme Court (Christina L. Ryba, J.), entered July 23, 2024 in Albany County, which, among other things, in a proceeding pursuant to Election Law § 16-102, denied certain respondents' motion to dismiss the petition, and (2) from a corrected judgment of said court, entered August 13, 2024 in Albany County, which granted petitioners' application, in a proceeding pursuant to Election Law § 16-102, to declare invalid the independent nominating petition designating certain respondents as candidates of the independent body We The People for the public offices of President of the United States, Vice President of the United States and Electors of President of the United States and Vice President of the United States in the November 5, 2024 general election.
In May 2024, the independent body We the People filed an independent nominating petition with the New York State Board of Elections nominating respondent Robert F. Kennedy Jr. as a candidate for the public office of President of the United States, respondent Nicole Shanahan as a candidate for the public office of Vice President of the United States, and 28 individuals as candidates for the public office of Elector of President and Vice President in the November 5, 2024 general election (hereinafter collectively referred to as the respondent candidates). As relevant here, the nominating petition listed Kennedy's address on Croton Lake Road in the hamlet of Katonah, New York. Petitioners filed objections to the nominating petition with the Board and, prior to the Board ruling on the objections, petitioners commenced this proceeding challenging the nominating petition's validity based upon their belief that Kennedy's place of residence, as stated in the petition, was not his true residence. The respondent candidates moved to dismiss the petition on the grounds that petitioners failed to properly serve the specification of objections as required by Election Law § 6-154 (3) (b) or, alternatively, that petitioners failed to join James L. Shear, a candidate for the office of Elector named in the nominating petition, as a necessary party. Petitioners opposed and cross-moved for summary determination invalidating the petition based upon Kennedy's alleged misrepresentation of his address in the nominating petition. The respondent candidates opposed and, following a hearing, Supreme Court denied their motion to dismiss, finding that petitioners had complied with the service requirements of Election Law § 6-154 (3) (b) and that the failure to join Shear did not invalidate the petition. Supreme Court also denied petitioners' cross-motion and the matter was scheduled for a hearing regarding the issue of Kennedy's residence. Following that hearing, Supreme Court concluded that the address listed in the independent nominating petition was not Kennedy's address within the meaning of the Election Law and invalidated the respondent candidates' nominating petition. The respondent candidates [*2]appeal both the order denying their motion to dismiss the petition and the corrected judgment invalidating their nominating petition.[FN1]
We affirm. Initially, we reject the respondent candidates' contention that Supreme Court erred in denying their motion to dismiss the petition. They first argue that, by serving a flash drive containing a copy of the specifications of objections, petitioners failed to satisfy the requirements of Election Law § 6-154 (3) (b). Election Law § 6-154 (3) (b) mandates that "a duplicate copy of the specification[s]" be served on each candidate named in the petition (see 9 NYCRR 6204.1 [b]). The flash drive containing a digital copy of the specifications of objections by petitioners served on the respondent candidates constitutes a "duplicate copy" as required by Election Law § 6-154 (3) (b) (cf. Matter of Sauberman v Weinstock, 183 AD3d 1107 [3d Dept 2020]). As to the failure to join Shear as a necessary party, "[t]his Court has noted that when the interests of the nonjoined party and a party who has been joined stand or fall together thereby diminishing any potential prejudice, joinder may be excused" (Matter of Doner v Comptroller of State of N.Y., 262 AD2d 750, 751 [3d Dept 1999] [internal quotation marks and citations omitted]; see Matter of Venne v Sanford, 25 AD3d 1007, 1008 [3d Dept 2006], lv denied 6 NY3d 806 [2006]; Matter of Long Is. Contractors' Assn. v Town of Riverhead, 17 AD3d 590, 594 [2d Dept 2005]). Here, the other 27 candidates for Elector, as well and Kennedy and Shanahan, were joined and have actively participated in this proceeding. Inasmuch as Shear's interests are so intertwined with the respondent candidates' interests, we are satisfied that his interests are adequately protected (see Matter of Long Is. Contractors' Assn. v Town of Riverhead, 17 AD3d at 594). Accordingly, Supreme Court properly denied the respondent candidates' motion to dismiss the petition.
As to the judgment invalidating the nominating petition, the Election Law requires that independent nominating petitions list the candidate's place of residence (see Election Law § 6-140 [1] [a]). Residence is defined as a place "where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return" (Election Law § 1-104 [22]; see People v O'Hara, 96 NY2d 378, 384 [2001]). "Residency is generally a factual question, dependent on the particular circumstances presented" (Matter of Glickman v Laffin, 27 NY3d 810, 815 [2016] [citation omitted]), and petitioners have the burden of establishing by clear and convincing evidence that the address Kennedy listed in the nominating petition was not his residence (see Matter of McArdle v Weis, 142 AD3d 567, 568 [2d Dept 2016]; Matter of Shafer v Dorsey, 43 AD3d 621, 622 [3d Dept 2007], lv denied 9 NY3d 804 [2007]). Notably, "the Election Law does not preclude a person from having two residences and choosing one for election purposes [*3]provided he or she has legitimate, significant and continuing attachments to that residence" (Matter of Maas v Gaebel, 129 AD3d 178, 180 [3d Dept 2015] [internal quotation marks and citations omitted]; see Matter of Wilkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089 [3d Dept 2008]). "The dispositive factor in determining whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence without any aura of sham" (Matter of Meyer v Whitney, 132 AD3d 1062, 1064 [3d Dept 2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 909 [2015]).
The hearing testimony reflects that, for the majority of his life, Kennedy resided in New York in or around the Town of Bedford, Westchester County. Then, in 2014, Kennedy married and moved himself and his family to his spouse's home in California. Since that time, Kennedy and his spouse have moved three different times to homes that they purchased in California. Kennedy is presently living in California. At the time Kennedy moved to California in 2014, he was teaching and running an environmental law clinic at Pace University in New York. He was also serving as chief prosecuting attorney and board member for Riverkeeper, an environmental activist organization dedicated to fighting pollution in the Hudson River in New York. Kennedy maintained these positions after the 2014 move to California, commuting between California and New York from Sunday to Wednesday two or three weeks per month, mainly during the school year. During that time, he stayed in a guest room in the home of two of his friends on Twin Lakes Drive in Bedford. Kennedy did not pay rent but he did use the friends' address to maintain his voter registration and his driver's license in New York. Kennedy also received mail at the friends' house, and his friend would forward the mail to Kennedy in California. In 2017, Kennedy resigned from Riverkeeper, citing the negative impact that the weekly commute from California was having on him and his family. Kennedy's position at Pace also ended around this time, and Kennedy testified that he did not stay at the house on Twin Lakes Drive after 2017. Despite not staying at that address after 2017, Kennedy continued to use it with the New York State Department of Motor Vehicles until July 2024.
On April 19, 2023, Kennedy declared his intention to run for President of the United States. Kennedy testified that, at that time, he asked another friend if he could stay at her house in Katonah, a hamlet located within Bedford. This friend agreed, and Kennedy testified that he began living there in May 2023. Kennedy did receive some mail at this residence, which his friend would forward to California. According to this friend, a written lease agreement was discussed at that time but was never drafted and Kennedy did not pay any rent for the first year. In May 2024, the petition nominating Kennedy for [*4]President was filed with the Board. On May 19, 2024, an article appeared in the New York Post questioning Kennedy's assertion that he was living at the Katonah address. According to the friend, although she had never asked for any rent money, the day after the article was published, she received $6,000 from Kennedy, equating to a year's back rent at $500 a month and she began receiving $500 a month going forward. Although two boxes of Kennedy's possessions, including clothing, were delivered to her house, the friend testified that she unpacked the boxes and put the belongings in the room. All the furnishings in the room belonged to the friend, and both Kennedy and the friend testified that Kennedy spent only one night at the Katonah home, in June 2024, approximately one month after his nominating petition was filed and two weeks after petitioners commenced this proceeding.
In light of the foregoing, petitioners have demonstrated by clear and convincing evidence that the Katonah address listed in the nominating petition was not Kennedy's residence under the Election Law. In the 15 months that Kennedy claimed the Katonah address was his residence, he admittedly only spent one night there and that was after he filed his nominating petition and after the media had questioned his stated residence. It also was not until this time that he began paying rent. Although Kennedy testified that he currently resides in California, he expressed that he intended to return to New York at some point. However, "intention without residence" is unavailing (Matter of Stewart v Chautauqua County Bd. of Elections, 69 AD3d 1298, 1301 [4th Dept 2010] [internal quotation marks and citation omitted], affd 14 NY3d 139 [2010]; see Matter of Willis v Suffolk County Bd. of Elections, 54 AD3d 436, 438 [2d Dept 2008], lv denied 11 NY3d 701 [2008]).
The respondent candidates further argue that the nominating petition was invalidated in error because the reference to the Katonah address was not made to intentionally mislead or confuse anyone, relying on Matter of Ferris v Sadowski (45 NY2d 815 [1978]) and Matter of Maloney v Ulster County Bd. of Elections (21 AD3d 692 [3d Dept 2005], lv denied 5 NY3d 706 [2005]). Contrary to those cases, this is not a situation where Kennedy erroneously listed a former residence in the nominating petition, but rather, Kennedy listed an address at which the record evidence reflects he has never resided (see Matter of Eisenberg v Strasser, 100 NY2d 590, 591 [2003]; compare Matter of Ferris v Sadowski, 45 NY2d at 817; Matter of Maloney v Ulster County Bd. of Elections, 21 AD3d at 693). Inasmuch as the evidence shows that Kennedy has never resided at the Katonah address listed in the nominating petition, Supreme Court properly invalidated the petition (see Matter of Eisenberg v Strasser, 100 NY2d at 591; Matter of Chaimowitz v Calcaterra, 76 AD3d 685, 686 [2d Dept 2010]).
Finally, we find that none of the constitutional challenges raised by the respondent [*5]candidates has merit.[FN2] The requirement that candidates provide their place of residence in the nominating petition pursuant to Election Law § 6-140 imposes a reasonable and nondiscriminatory burden on rights under the First and Fourteenth Amendments, which is justified under New York's broad authority to regulate the electoral process (see Burdick v Takushi, 504 US 428, 434 [1992]; Anderson v Celebrezze, 460 US 780, 788 [1983]). Further, the requirement that a candidate list his or her residence address in a nominating petition does not establish an additional qualification for the office of President in violation of the Qualifications Clause of the US Constitution (see US Const, art II, § 1 [5]; Storer v Brown, 415 US 724, 746 n 16 [1974]; Matter of Kryzan v New York State Bd. of Elections, 55 AD3d 1217, 1220 [3d Dept 2008]). Lastly, we reject the respondent candidates' claim that New York's requirement that Kennedy truthfully identify his place of residence in the nominating petition violates the Twelfth Amendment of the US Constitution, and their reliance on Jones v Bush (122 F Supp 2d 713 [ND Tex 2000], affd 224 F3d 134 [5th Cir 2000], cert denied 531 US 1062 [2001]) is unavailing.
Garry, P.J., Clark, Ceresia and Mackey, JJ., concur; Pritzker, J., not taking part.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the corrected judgment is affirmed, without costs.

Footnotes

Footnote 1: Although the entry of the final judgment requires dismissal of the appeal from this interlocutory order, "our review of the judgment includes any issues raised in relation to that order" (Hassan v Barakat, 171 AD3d 1371, 1373 n 1 [3d Dept 2019]; see CPLR 5501 [a] [1]).

Footnote 2: We note that the respondent candidates belatedly provided notice to the Attorney General of the constitutional challenges as required by Executive Law § 71, and the Attorney General's office advised this Court that it did not intend to intervene at this time.